E-FILED
Monday, 20 March, 2023  06:12:38 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| IN RE AFNI, INC. DATA BREACH LITIGATION | Lead Case No. 1:22-cv-01287-JES-JEH |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
<u>MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 1

III.    SETTLEMENT DISCUSSIONS ......................................................................... 2

IV.     TERMS OF THE SETTLEMENT ...................................................................... 3

   A.    The Settlement Benefits .................................................................................. 3

      1.    Cash Compensation ................................................................................... 4

      2.    Identity Theft Monitoring Services ........................................................... 4

      3.    Reimbursement For Out-Of- Pocket Losses and Lost Time ..................... 4

   B.    Notice and Settlement Administration ............................................................ 5

   C.    Opt-Outs and Objections ................................................................................ 6

   D.    Attorneys' Fees, Litigation Costs and Expenses, and Service Awards .......... 7

   E.    Release ............................................................................................................ 7

V.      THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............ 7

   A.    Legal Standard ................................................................................................ 7

   B.    The Court Should Preliminarily Approve the Settlement Class ..................... 8

      1.    The Settlement Class Meets the Requirements of Rule 23(a) ................... 8

      2.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ............ 12

   B.    The Settlement is Within the Range of Possible Approval ........................... 14

      1.    Strength of Plaintiffs' Case and Settlement ............................................ 15

      2.    Complexity, Length, and Expense of Continued Litigation .................... 16

      3.    Opposition to the Settlement ................................................................... 17

      4.    Opinion of Competent Counsel ............................................................... 17

      5.    Stage of the Proceedings and Discovery ................................................. 18

   C.    The Court Should Approve the Proposed Notice .......................................... 18

VI.     CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*,
   203 F.R.D. 403 (S.D. Ind. 2001)..................................................................................... 9

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219 (N.D. Ill. July 26, 2011) ......................... *passim*

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ..................................................................................... 12, 15, 16

*Arreola v. Godinez*,
   546 F.3d 788 (7th Cir. 2008) ..................................................................................... 6

*Baum v. Mayo Clinic Ambulance*,
   No. 20-cv-409-wmc, 2022 U.S. Dist. LEXIS 19509 (W.D. Wis. Feb. 3, 2022) ..................... 15

*Beaton v. SpeedyPC Software*,
   No. 13-cv-08389, 2017 U.S. Dist. LEXIS 173631 (N.D. Ill. Oct. 19, 2017) .......................... 10

*Bruzek v. Husky Energy, Inc.*,
   No. 18-cv-697-wmc, 2021 U.S. Dist. LEXIS 261287 (W.D. Wis. Aug. 6, 2021) .................. 15

*Chapman v. Bowman*,
   No. 2:15-CV-120 JD, 2015 U.S. Dist. LEXIS 172338 (N.D. Ind. Dec. 29, 2015).................... 9

*Clements v. WP Operations, LLC*,
   No. 19-cv-1051-wmc, 2022 U.S. Dist. LEXIS 160027 (W.D. Wis. Sep. 6, 2022) ........... 11, 14

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ..................................................................................... 12

*Edwards v. Educ. Mgmt. Corp.*,
   No. 1:18-cv-03170-RLY-DLP, 2022 U.S. Dist. LEXIS 150784
   (S.D. Ind. June 13, 2022) ..................................................................................... *passim*

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ..................................................................................... 12

*Gomez v. St. Vincent Health, Inc.*,
   649 F.3d 583 (7th Cir. 2011) ..................................................................................... 8

*Groshek v. Great Lakes Higher Educ. Corp.*,
   No. 15-cv-143-jdp, 2016 U.S. Dist. LEXIS 125089, at *4 (W.D. Wis. Apr. 13, 2016)............ 7

*Harper v. Sheriff*,
  581 F.3d 511 (7th Cir. 2009) ................................................................. 6

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010).............................................. 12, 13, 14, 16

*In re Tiktok, Inc., Consumer Privacy Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ............................................. *passim*

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ................................................................. 12

*Kaufman v. Am. Express Travel Related Servs. Co.*,
  264 F.R.D. 438 (N.D. Ill. 2009)............................................................... 7

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
  Nos. 05 C 5944, 07 C 2439, 2007 U.S. Dist. LEXIS 84450 (N.D. Ill. Nov. 14, 2007)........... 12

*Lechuga v. Elite Eng'g, Inc.*,
  559 F. Supp. 3d 736 (N.D. Ill. 2021) ............................................... 6, 7, 8

*Lucas v. Vee Pak, Inc.*,
  No. 12-CV-09672, 2017 U.S. Dist. LEXIS 209872 (N.D. Ill. Dec. 20, 2017).................. 10, 15

*McCabe v. Crawford & Co.*,
  210 F.R.D. 631 (N.D. Ill. 2002)........................................................... 6, 8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)............................................................................ 16

*Parker v. Risk Mgmt. Alts., Inc.*,
  206 F.R.D. 211 (N.D. Ill. 2002).............................................................. 7

*Smith-Brown v. Ulta Beauty*,
  335 F.R.D. 521 (N.D. Ill. 2020)............................................................. 10

*Stewart v. Marshall Etc, Inc.*,
  No. 14-CV-1002-NJR-PMF, 2015 U.S. Dist. LEXIS 114581, at *7
  (S.D. Ill. Aug. 28, 2015) ...................................................................... 8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ........................................................... 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).............................................................................. 7

*Wesley v. Gen. Motors Acceptance Corp.*,
   1992 U.S. Dist. LEXIS 3594 (N.D. Ill. Mar. 20, 1992)............................................................... 7

**Statutes**

815 ILCS 505/2............................................................................................................................. 6

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

## I.    INTRODUCTION

Plaintiffs Marian Caldwell Powell, Leniox Campbell, Leslie Green, Thomas Davis, and Nicole Prochnow, individually and as Class Representatives[1] ("Plaintiffs") and Defendant Afni, Inc. ("Afni" or "Defendant") (and together with Plaintiffs, the "Settling Parties") have settled this putative class action arising out of Plaintiffs' allegations regarding a data breach incident that occurred on or about June 7, 2021, in which cybercriminals had unauthorized access to Defendant's network systems (the "Data Breach"). The proposed settlement, as set forth in the executed Settlement Agreement and Release ("Settlement") attached as Exhibit A, resolves Plaintiffs' claims on a class-wide basis, is fair, reasonable, and adequate, and satisfies all the criteria for preliminary approval.

With this motion, Plaintiffs respectfully request that the Court: (1) conditionally certify the Settlement Class for settlement purposes; (2) name Plaintiffs as Class Representatives; (3) appoint Ben Barnow of Barnow and Associates, P.C. and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, LLC as Class Counsel; (4) grant preliminary approval of the Settlement; (5) approve the proposed Notice and direct its distribution to Settlement Class Members; (6) set deadlines for Settlement Class Members to object or opt out; and (7) schedule a final approval hearing, at which time the Court can consider whether to give final approval to the Settlement.

## II.    BACKGROUND

According to a Notice of Data Event Afni provided to the Maine Attorney General's Office, "[o]n June 7, 2021, Afni discovered anomalous activity within its computer network."[2] Afni

---

[1] Unless otherwise noted herein, capitalized terms have the same meaning given to them in the Settlement Agreement.

[2] *Notice of Data Event*, Afni (June 14, 2022), available at https://apps.web.maine.gov/online/aeviewer/ME/40/22f470bc-511d-4067-911d-bbf0b230e9c6.shtml (last accessed Mar. 20, 2023).

1

conducted an investigation with the aid of third-party cyber-forensic specialists and "determined that on or before June 7, 2021, an unauthorized actor gained access to certain Afni systems and that the unauthorized actor may have viewed or taken data from within those systems."[3] As a result of the Data Breach, the personally identifiable information ("Personal Information") of approximately 261,449 persons was compromised when an unauthorized third party illegally accessed Defendant's computer systems and data. The personal information potentially affected by the data security incident included names, addresses, dates of birth, Social Security numbers, and financial account information.[4]

On October 28, 2022, Plaintiffs filed a Consolidated Class Action Complaint on behalf of themselves and similarly situated individuals, alleging claims for Afni's failure to ensure that their Personal Information was adequately safeguarded from cyberattacks.[5] Plaintiffs brought claims for negligence, breach of implied contract, violations of the Illinois Consumer Fraud Act and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.*, unjust enrichment, and invasion of privacy.[6]

## III.    SETTLEMENT DISCUSSIONS

Beginning in November, 2022, the Settling Parties engaged in extensive arm's length negotiations and mediation concerning a possible settlement of this matter. Declaration of Ben Barnow ("Barnow Decl."), attached as Exhibit B, ¶ 3. In advance of formal mediation, the Settling Parties discussed their respective positions on the merits of the claims and class certification and provided detailed information to the mediator on the relevant facts and law. *Id.* ¶ 4. Following extensive arm's length settlement negotiations, including a full-day mediation before Hon. Morton

---

[3] *Id.*
[4] *Id.*; Consolidated Class Action Complaint ("CAC"), ECF No. 8, ¶ 24.
[5] *See generally* CAC, ECF No. 8.
[6] *Id.* ¶¶ 99–159.

Denlow (Ret.) on January 24, 2023, the Settling Parties reached agreement on the general terms of the Settlement. *Id.* ¶ 5.

The Settling Parties recognize and acknowledge the benefits of settling this case. Absent settlement, Plaintiffs believe that they would succeed in certifying the Class of approximately 261,449 of Afni's current and former customers. *Id.* ¶ 8. Nevertheless, Plaintiffs recognize that all litigation has risks, and that discovery, class certification proceedings, and trial will be time-consuming and expensive for both parties. *Id.* Plaintiffs also recognize the potential benefits of early resolution, not the least being that Settlement Class Members will receive proper identity theft protections and compensation far sooner. *Id.* ¶ 9. Plaintiffs' counsel have, therefore, determined that the Settlement agreed to by the Settling Parties is fair, reasonable, and adequate. *Id.* ¶ 6.

Defendant maintains that it has a number of meritorious defenses to the claims asserted in this action and denies any and all liability. Nevertheless, Defendant recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations. Accordingly, Defendant believes that the Settlement is likewise in its best interests. Defendant does not dispute that the Settlement Class should be certified for the purposes of settlement only.

## IV.    TERMS OF THE SETTLEMENT

### A.    The Settlement Benefits

The Settlement requires Afni to pay $1,850,000.00 into the Settlement Fund. Settlement, ¶ 44. Compensation will be paid from the Settlement Fund to Settlement Class Members who submit a timely and valid claim form approved by the Settlement Administrator. *See id.* ¶ 48. Claims will be subject to review for completeness and plausibility by the Settlement Administrator. *See id.* ¶¶ 51, 53, 76(i). For claims deemed invalid, the Settlement Administrator will provide claimants an

opportunity to cure. *Id.* ¶ 54. The Settlement Fund will be used to provide the following benefits to the Class:

### 1.    Cash Compensation

In lieu of all compensation described in sections IV.A.2. and IV.A.3. below, Settlement Class Members may select a one-time cash payment estimated to be approximately $60.00, subject to proration depending on the number of claims filed. *Id.* ¶ 56.

### 2.    Identity Theft Monitoring Services

In addition to the benefits described in section IV.A.3 below, and in the alternative to the cash payment described in section IV.A.1 above, Settlement Class Members may select two years of three-bureau credit monitoring and identity theft protection services. The identity theft monitoring will include daily three-bureau credit monitoring, identity restoration services, and $1 million in identity theft insurance. *Id.* ¶ 55.

### 3.    Reimbursement For Out-Of- Pocket Losses and Lost Time

#### i.    Compensation For Out-of-Pocket Losses

Settlement Class Members may claim up to $5,000.00 by submitting a valid and timely claim form and supporting third-party documentation for Out-of-Pocket Losses incurred as a result of the Data Breach. *Id.* ¶ 50. To qualify for reimbursement, the Out-of-Pocket Losses must be fairly traceable to the Data Breach and not previously reimbursed by a third party. *Id.* ¶ 26. In determining whether Out-of-Pocket Losses are fairly traceable to the Data Breach, the Settlement Administrator will consider "(i) whether the timing of the loss occurred on or after June 7, 2021; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the same type of Personal Information that was potentially impacted as a result of the Data [Breach]." Ordinary losses include, but are not limited to, the following categories:

> [C]osts associated with credit monitoring or identity theft insurance purchased directly by the claimant; costs associated with requesting a credit report; costs associated with a credit freeze; costs associated with cancelling a payment card and/or obtaining a replacement payment card; costs associated with closing a bank account and/or opening a new bank account; postage, long-distance phone charges, express mail and other incidental expenses; unrefunded overdraft and/or overdraft protection fees; unrefunded late and/or missed payment fees and/or charges; and damage and costs associated with any stolen funds, fraudulent transactions, unauthorized accounts, and/or fraudulent tax returns.

*Id.* ¶ 26.

### ii.    Compensation For Lost Time

Settlement Class Members may claim up to four (4) hours of lost time spent dealing with the Data Breach, at $25.00 per hour. *Id.* ¶ 52. All such lost time must be reasonably described and supported by an attestation that the time spent was related to the Data Breach. *Id.* Payments for Lost Time, in addition to payments for Out-of-Pocket Losses, are subject to the $5,000 cap. *Id.*

### B.    Notice and Settlement Administration

The Parties have agreed to the appointment of Angeion Group as Settlement Administrator. *Id.* ¶ 36; Barnow Decl. ¶ 12; Declaration of Steven Weisbrot ("Angeion Decl."), attached as Exhibit C. The Settlement Administrator will, subject to Court approval, provide notice to the Class in the manner set forth below. The cost of such Notice will be paid from the Settlement Fund. Settlement, ¶ 48; Barnow Decl. ¶ 12. Defendant, through the Settlement Administrator, will provide written notice in the form of a Postcard Notice via United States Mail to Settlement Class Members with known addresses. Settlement, ¶¶ 70–71; Barnow Decl. ¶ 12; Angeion Decl. ¶ 14. The Settlement Administrator shall perform a National Change of Address Search on the Settlement Class List, as well as skip-tracing for any returned mail, and shall re-mail notice to any Settlement Class Members whose addresses are uncovered by skip-tracing. Settlement, ¶ 70; Barnow Decl. ¶ 12; Angeion Decl. ¶¶ 14–18. The Settlement Administrator will also create a publicly available website and toll-free hotline devoted to providing relevant information related

to the case and settlement and assistance to Class Members. Settlement, ¶ 76(f)–(g); Barnow Decl. ¶ 12; Angeion Decl. ¶¶ 19–20. The Settlement Administrator will review and evaluate each Claim Form, including any required documentation submitted, for validity, timeliness, and completeness. *See* Settlement, ¶ 76(i); Barnow Decl. ¶ 13; Angeion Decl. ¶ 21.

### C.    Opt-Outs and Objections

The Short Form Notice shall inform each Settlement Class Member of their right to request exclusion from the Settlement Class and not to be bound by the Settlement if the Settlement Class Member personally completes and mails a request for exclusion to the Settlement Administrator at the address set forth in the Short Form Notice by the Opt-Out Deadline. Settlement, ¶ 73. For a Settlement Class Member's Opt-Out Request to be valid, it must "include the name of the proceeding, the individual's full name, current address, personal signature, and the words 'Request for Exclusion' or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication." *Id.*

Furthermore, Settlement Class Members will be able to object to the Settlement by sending a written objection to the Settlement Administrator by the Objection Deadline. *See id.* ¶ 74. Each Objection must include:

> (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney.

*Id.*

**D.      Attorneys' Fees, Litigation Costs and Expenses, and Service Awards**

Class Counsel shall request the Court to approve an award of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund plus reasonable litigation costs and expenses, as well as a Service Award of $2,500 to each Class Representative (for a total of $12,500), all of which shall, if approved by the Court, be paid from the Settlement Fund. Settlement, ¶¶ 89, 91. The Service Award reflects the work the Class Representatives have performed in assisting Class Counsel with this litigation, including numerous telephonic conferences with Class Counsel. Barnow Decl. ¶ 10.

**E.      Release**

In exchange for the relief described above, Class Members who do not opt out of the Settlement will fully release Afni for all Released Claims, including claims based on "(1) the alleged access, disclosure and/or acquisition of Settlement Class Members' personal information in the Data Incident; (2) Afni's maintenance of Settlement Class Members' personal information as it relates to the Data Incident; (3) Afni's information security policies and practices as it relates to the Data Incident; and (4) Afni's provision of notice to Settlement Class Members following the Data Incident." Settlement, ¶¶ 29, 86.

**V.      THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

**A.      Legal Standard**

Pursuant to Federal Rule of Civil Procedure 23, class actions may not be settled without the court's approval. Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court must determine two issues. "The first issue is whether the Court 'will likely be able' to certify the putative Settlement Class for purposes of a judgment on the proposed settlement." *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021) (citing Fed. R. Civ. P. 23(e)(1)(B)(ii)). "The next issue is whether the proposed settlement is 'within the range of possible

7

approval' with regard to its fairness, reasonableness, and adequacy to class members." *Id.* at 1087 (citations omitted); *see also* Fed. R. Civ. P. 23(e)(1)(B)(i), (e)(2).

**B.      The Court Should Preliminarily Approve the Settlement Class**

"Before assessing whether the settlement is within the range of reasonableness to allow it to proceed to a final fairness hearing, the court must conduct an independent class certification analysis." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *22 (N.D. Ill. July 26, 2011). That is so even where, as here, the Settling Parties have stipulated to the certification of a settlement class. *See Edwards v. Educ. Mgmt. Corp.*, No. 1:18-cv-03170-RLY-DLP, 2022 U.S. Dist. LEXIS 150784, at *7 (S.D. Ind. June 13, 2022); Settlement, ¶ 79. "To certify a class, a district court must find that each requirement of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) is satisfied as well as one subsection of Rule 23(b)." *Harper v. Sheriff*, 581 F.3d 511, 513 (7th Cir. 2009). "District courts have broad discretion to determine whether certification of a class is appropriate." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 741 (N.D. Ill. 2021) (citing *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)).

The Settlement Class is defined as "the persons to whom Afni provided notification that their personal information was exposed in the Data Incident that occurred on or about June 7, 2021." Settlement, ¶ 37. The Settlement Class is certifiable because it satisfies all of the requirements of Rule 23.

**1.      The Settlement Class Meets the Requirements of Rule 23(a)**

Rule 23 sets forth four prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Here, the Settlement Class satisfies all of Rule 23(a)'s requirements.

### i.    Numerosity

"Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002); *Edwards*, 2022 U.S. Dist. LEXIS 150784, at *8. In this case, approximately 261,449 persons were impacted by the Data Breach. *See, e.g.*, CAC, ECF No. 8, ¶ 93. The number of putative settlement class members is well in excess of the 40-member guideline, and joinder of so many individuals is clearly impracticable. As such, the proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement. *See, e.g.*, *Groshek v. Great Lakes Higher Educ. Corp.*, No. 15-cv-143-jdp, 2016 U.S. Dist. LEXIS 125089, at *4 (W.D. Wis. Apr. 13, 2016) (granting preliminary approval to class containing 892 class members); *Lechuga*, 559 F. Supp. at 742 (75 class members); *Edwards v.* 2022 U.S. Dist. LEXIS 150784, at *8 (1,450 class members).

### ii.    Commonality

"Commonality generally requires the presence of questions of law or fact common to the class." *Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002). "In other words, the claims of the class must depend on a common contention capable of classwide resolution." *Edwards*, 2022 U.S. Dist. LEXIS 150784, at *9 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Commonality is satisfied when "'class members have suffered the same injury' and [] their claims 'depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Lechuga*, 559 F. Supp. 3d at 742 (ellipses in original) (quoting *Dukes*, 564 U.S. at 349–50). Commonality does not require "'every class member's

factual or legal situation to be a carbon copy' of those of the named plaintiffs, so the 'low commonality hurdle is easily surmounted.'" *Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 442 (N.D. Ill. 2009) (quoting *Wesley v. Gen. Motors Acceptance Corp.*, 1992 U.S. Dist. LEXIS 3594, at *3 (N.D. Ill. Mar. 20, 1992)).

Here, all Settlement Class Members were injured by the same event—the Data Breach. All Settlement Class Members were injured in similar ways, such as diminution of the value of their personal information. *See* CAC, ECF No. 8, ¶¶ 46–47. Settlement Class Members also share numerous questions of law, including whether and to what extent Afni is liable for the Data Breach, and whether and to what extent class members are entitled to relief. *See id.* ¶ 94–95. Since Settlement Class Members share questions of fact and law, commonality is satisfied.

### iii.  Typicality

"Typicality asks whether the claims of the class representative are typical of the class as a whole." *Edwards*, 2022 U.S. Dist. LEXIS 150784, at *9. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory." *Stewart v. Marshall Etc, Inc.*, No. 14-CV-1002-NJR-PMF, 2015 U.S. Dist. LEXIS 114581, at *7 (S.D. Ill. Aug. 28, 2015). "The commonality and typicality requirements of Rule 23(a) are often interrelated." *Id.* Plaintiffs' claims arise out of the same Data Breach that impacted all Settlement Class Members, and are based on the same legal theories as the potential claims of all class members. Plaintiffs, like Settlement Class Members, received a notice letter indicating their personal information was included in the Data Breach. *See* CAC, ECF No. 8, ¶¶ 7–10. Therefore, the typicality requirement is met.

### iv.    Adequacy of Representation

"The adequacy inquiry comprises two parts: '(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members . . . and (2) the adequacy of the proposed class counsel.'" *Lechuga*, 559 F. Supp. 3d at 742 (quoting *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)). Representative plaintiffs' interests cannot conflict with those of the class, and class counsel must be "competent, experienced and qualified." *McCabe*, 210 F.R.D. at 645 . Courts also "consider the existence of a proposed settlement and its terms . . . as relevant considerations to the adequacy of the class representatives and class counsel." *Am. Int'l Grp., Inc.*, 2011 U.S. Dist. LEXIS 84219, at *25. Here, Plaintiffs have no interests adverse to those of the Settlement Class, as they have "a common interest in the success of the litigation." *Chapman v. Bowman*, No. 2:15-CV-120 JD, 2015 U.S. Dist. LEXIS 172338, at *10 (N.D. Ind. Dec. 29, 2015). Plaintiffs' adequacy is further demonstrated by their active involvement in this litigation since its inception. *See All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*, 203 F.R.D. 403, 411 (S.D. Ind. 2001) ("Active involvement in the case . . . helps demonstrate adequate representation."); *Chapman*, 2015 U.S. Dist. LEXIS 172338, at *10 ("[Plaintiff] has been a model class representative who has diligently pursued the case since its inception."). In addition, Class Counsel are well-qualified to represent the Settlement Class. Class Counsel have extensive experience litigating complex data breach class actions. Indeed, Class Counsel's adequacy is demonstrated by the fact that they "are the same attorneys whom the Court vetted and selected to serve as Plaintiffs' Interim Co-Lead Counsel," and therefore the Court should be "confident that they possess the qualifications, experience, and capabilities needed to champion" the interests of the Settlement Class. *See In re Tiktok*, 565 F. Supp. 3d at 1085; Order Granting Mot. Consolidate, ECF No. 7.

### 2. The Settlement Class Meets the Requirements of Rule 23(b)(3)

"Because Plaintiffs seek to certify the Class under Rule 23(b)(3), the Court also must consider whether it is likely to conclude that" Rule 23(b)(3)'s requirements are satisfied. *In re Tiktok*, 565 F. Supp. 3d at 1086. Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Here, both of Rule 23(b)(3)'s requirements are met.

### i. Common Questions Predominate Over Individual Questions

The predominance analysis "simply tests whether the proposed classes are cohesive enough to warrant adjudication by representation." *Edwards*, 2022 U.S. Dist. LEXIS 150784, *11– *12. Predominance is satisfied when "common questions are a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 U.S. Dist. LEXIS 209872, *22 (N.D. Ill. Dec. 20, 2017) (internal quotations omitted). Common questions are susceptible to generalized, class-wide proof. *See Smith-Brown v. Ulta Beauty*, 335 F.R.D. 521, 531 (N.D. Ill. 2020); *Beaton v. SpeedyPC Software*, No. 13-cv-08389, 2017 U.S. Dist. LEXIS 173631, at *23 (N.D. Ill. Oct. 19, 2017) ("[C]ommon questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class.").

Commons questions clearly predominate here. All Class members' claims arise out of the same singular incident, the Data Breach. Plaintiffs assert claims for, *inter alia*, negligence, breach of implied contract, and invasion of privacy. CAC, ECF No. 8, ¶¶ 99–159. All of Plaintiffs' claims arise out of the Data Breach. Questions common to the Settlement Class include whether Afni had a duty to protect the Personal Information in its possession; whether Afni breached those duties;

whether class members had a legitimate expectation of privacy regarding their PII; and whether Afni engaged in deceptive or unfair acts and practices in violation of Illinois law. These issues of law and fact, which are shared by Plaintiffs and Class members, can be decide by the same evidence, and therefore common questions predominate. *See In re Tiktok*, 565 F. Supp. 3d at 1086 ("Predominance is met because many of the issues of law and fact common to members of the [Class] may be resolved through generalized proof—namely, by examining Defendants' uniform data collection and privacy practices against their legal obligations." (internal quotations omitted)).

### ii.    A Class Action is Superior to Other Methods of Adjudication

"Superiority requires that a class action be the superior method of litigation for the fair and efficient adjudication of the controversy." *Edwards*, 2022 U.S. Dist. LEXIS 150784, at *12. "Courts have recognized that the class action device is superior where the defendant engaged in standardized conduct and the individual class members' claims would be too small to vindicate through an individual suit." *Lucas*, 2017 U.S. Dist. LEXIS 209872, at *23–*24. A court does not need to consider manageability issues for a settlement-only class. *Id.* at *23 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997)); *Edwards*, 2022 U.S. Dist. LEXIS 150784, at *12 (citing *Amchem*, 521 U.S. at 620).

A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims. The damages suffered by each Class member are relatively small and are unlikely to be pursued through individual litigation. *See, e.g.*, *Lechuga*, 559 F. Supp. 3d at 743 (finding superiority satisfied where claim value was "substantially less than the expenses any class member would likely incur to litigate his or her claim on an individual basis"); *Stewart*, 2015 U.S. Dist. LEXIS 114581, at *9 ("Given the relatively small economic harm suffered by each individual, a class action is a superior method of adjudicating this controversy."). Additionally,

13

Settlement Class Members' claims arise from the same incident (the Data Breach), involve the same conduct by Defendant, and all share the same claims, which require the same proof; as such, a class action is clearly superior to "the possibility of duplicative, individual adjudication of each class member's claim." *Clements v. WP Operations, LLC*, No. 19-cv-1051-wmc, 2022 U.S. Dist. LEXIS 160027, at *9 (W.D. Wis. Sep. 6, 2022). A class action is the superior method of adjudicating this dispute.

### B.    The Settlement is Within the Range of Possible Approval

At the preliminary approval stage, "the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Am. Int'l Grp., Inc*, 2011 U.S. Dist. LEXIS 84219, at *32–*33 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)). The Court "is not 'resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *Id.* at *34 (quoting *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)).

"In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (additional citations omitted)). "Although this standard and the factors used to measure it are ultimately questions for the [final] fairness hearing . . . a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts*

14

*Int'l's Holiday Network, Ltd.*, Nos. 05 C 5944, 07 C 2439, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007). Courts "do not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness." *In re Tiktok*, 565 F. Supp. 3d at 1084 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

### 1.    Strength of Plaintiffs' Case and Settlement

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced with the amount offered in the settlement." *Synfuel*, 463 F.3d at 653. "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T,* 270 F.R.D. at 347 (citation omitted). "Ultimately, preliminary approval requires only that the settlement figure is within a reasonable range." *Am. Int'l Grp.*, 2011 U.S. Dist. LEXIS 84219, at *36.

Plaintiffs and Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. Afni has maintained its position that Plaintiffs cannot state a claim for relief, that a class could not be certified, that it would not be found liable at trial, and that Plaintiffs would not be able to prove damages resulting from the Data Breach. While they disagree with Afni's views, Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. They also recognize the difficulties in establishing liability on a class-wide basis through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here.

Pursuing this litigation through trial and appeal would be lengthy, complex, and impose significant costs on all parties. The Settlement provides immediate benefits in the form of a non-reversionary Settlement Fund of $1,850,000.00 for a class of approximately 261,449 persons. Settlement Class Members can claim compensation for out-of-pocket expenses, lost time, and

receive credit monitoring, or alternatively receive a cash payment. This excellent outcome was reached after hard-fought arm's length negotiation between Defendant and Court-appointed Interim Co-Lead Counsel, informal discovery, and a full-day mediation before a respected mediator. Even if Plaintiffs' claims are meritorious, as Class Counsel believes, "a future victory is not as valuable as a present victory." *In re AT&T*, 270 F.R.D. at 347. This factor favors preliminary approval. *See, e.g.*, *Am. Int'l Grp.*, 2011 U.S. Dist. LEXIS 84219, at *36–*37; *In re Tiktok*, 565 F. Supp. 3d at 1088.

### 2.    Complexity, Length, and Expense of Continued Litigation

Plaintiffs and Class Counsel recognize that there are substantial risks to continuing this litigation. As noted above, they are aware of inherent difficulties of proving their claims, defenses Afni may assert, and the hurdles that must be overcome to establish liability on a class-wide basis. Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, extensive fact discovery, class certification proceedings, dispositive motions and, of course, a trial and appeal. *See In re Tiktok*, 565 F. Supp. 3d at 1091 ("Proceeding to trial likely would take years and entail extensive fact and expert discovery and motion practice, including, in all probability, a contested motion to certify, motions for summary judgment, and *Daubert* motions."). Given the complex nature of the security breach at issue, a battle of the experts at trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant motion practice related to such. Also, considering the size of the Settlement Class and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay. The Settlement avoids these expenses, delays, and risks and gives Settlement Class Members certain relief. *See Clements*, 2022 U.S. Dist. LEXIS 160027, at *13 ("Further litigation to resolve plaintiff's claim involves expenses to both parties, while the proposed settlement substantially reimburses class members without the hardships of continuing

litigation."). Avoiding additional complex, lengthy, and expensive litigation weighs in favor of preliminary approval.

### 3.    Opposition to the Settlement

As notice has not yet been sent to the Class, "it is too early to evaluate affected parties' opposition to the settlement." *Lucas*, No. 2017 U.S. Dist. LEXIS 209872, at *37. "At this point, the only way to gauge . . . opposition is to solicit it by sending notice of the settlement to the class and inviting its members to voice their opinions." *Am. Int'l Grp.*, 2011 U.S. Dist. LEXIS 84219, at *39. The Court may "consider objections from class members or other affected parties during the fairness hearing and before determining whether to grant final approval." *Lucas*, 2017 U.S. Dist. LEXIS 209872, at *37. "Because the process for class members to oppose the settlement awaits, this factor does not currently weigh for or against preliminary approval of the settlement." *Baum v. Mayo Clinic Ambulance*, No. 20-cv-409-wmc, 2022 U.S. Dist. LEXIS 19509, at *11–*12 (W.D. Wis. Feb. 3, 2022).

### 4.    Opinion of Competent Counsel

The Court is "entitled to rely heavily on the opinion of competent counsel" when determining whether to grant preliminary approval. *See Am. Int'l Grp.*, 2011 U.S. Dist. LEXIS 84219, at *39–*40 (quoting *Armstrong*, 616 F.2d at 325). There is no evidence of collusion here, as the Proposed Settlement was reached after extensive arm's length negotiations and a full day mediation. *Lucas*, 2017 U.S. Dist. LEXIS 209872, at *37. Class Counsel and Afni's Counsel are experienced litigators and all support the Proposed Settlement, which favors approval. *See, e.g.*, *Edwards*, 2022 U.S. Dist. LEXIS 150784, at *18 ("Both Class Counsel and Defense Counsel recommend that settlement should be approved, which weighs in favor of approval." (internal citation omitted)); *Bruzek v. Husky Energy, Inc.*, No. 18-cv-697-wmc, 2021 U.S. Dist. LEXIS 261287, at *11 (W.D. Wis. Aug. 6, 2021) (same).

### 5.    Stage of the Proceedings and Discovery

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp.*, 2011 U.S. Dist. LEXIS 84219, at \*39–\*40 (quoting *Armstrong*, 616 F.2d at 325). "[T]he standard under this factor is not whether it is conceivable that more discovery could possibly be conducted," and courts have approved settlements where there was no or only informal discovery. *Id.* at \*41. Here, the Settling Parties exchanged informal discovery prior to mediation. The Settling Parties also engaged in extensive arm's length negotiation, ensuring each Party clearly understood the strengths and weaknesses of their case. *See In re Tiktok*, 565 F. Supp. 3d at 1091. At this stage of the proceeding, the Settling Parties have enough information to aid the Court in determining "whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A); s*ee In re AT&T*, 270 F.R.D. at 350 ("Because counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits, this factor does not weigh against preliminary approval." (internal citations and quotations omitted)).

### C.    The Court Should Approve the Proposed Notice

If the Court "finds that it will likely be able to certify the putative class and that the proposed settlement is within the range of possible approval, the [C]ourt must then direct the plaintiffs to provide notice 'in a reasonable manner to all class members who would be bound' by the proposed settlement agreement." *In re Tiktok*, 565 F. Supp. 3d at 1084 (quoting Fed. R. Civ. P. 23(e)(1)). For a proposed settlement class under Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "The best notice practicable is that which is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" *In re Tiktok*, 565 F. Supp. 3d at 1091

18

(quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The notice must

inform Class Members of "(i) the nature of the action; (ii) the definition of the class certified; (iii)

the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an

attorney if the member so desires; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect

of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice plan satisfies all of these criteria. The Notice will inform Settlement

Class Members of the substantive terms of the Settlement, their options for opting-out of or

objecting to the Settlement, and how to obtain additional information about the Settlement. *See*

Settlement Exs. 1–3. Specifically, the Notice will advise Settlement Class Members of: (i) the

pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information

regarding Plaintiffs' Counsel's motion for award of attorneys' fees, reimbursement of costs and

expenses, and Class Representative incentive awards. The Notice will also provide specifics on

the date, time, and location of the Final Fairness Hearing and set forth the procedures, as well as

deadlines, for submitting a Claim Form, opting out of the Settlement Class, and objecting to the

Settlement or Plaintiffs' motion for award of attorneys' fees, reimbursement of costs and expenses,

and Class Representative incentive awards. Altogether, the Notice documents fairly apprise the

Settlement Class Members of the terms of the Settlement and the options that are open to them in

connection with this litigation.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1)

conditionally certifying the Settlement Class for settlement purposes; (2) naming Plaintiffs Marian

Caldwell Powell, Leniox Campbell, Leslie Green, Thomas Davis, and Nicole Prochnow as Class

Representatives; (2) appointing Ben Barnow of Barnow and Associates, P.C., and Gary M. Klinger

19

of Milberg Coleman Bryson Phillips Grossman, LLC, as Class Counsel; (4) granting preliminary approval of the Settlement; (5) approving the proposed Notice and directing its distribution to Settlement Class Members; (6) setting deadlines for Settlement Class Members to object or opt out; and (7) scheduling a final approval hearing, at which time the Court can consider whether to give final approval to the Settlement.

Dated: March 20, 2023

Respectfully submitted,

/s/ Ben Barnow
Ben Barnow
Anthony L. Parkhill
Riley W. Prince
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com
rprince@barnowlaw.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

***Interim Co-Lead Counsel***

## CERTIFICATE OF COMPLIANCE

Pursuant to Civil LR 7.1(B)(4)(c), the undersigned certifies that this memorandum contains 6,139 words.

/s/ Ben Barnow
Ben Barnow