**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AFNI, INC. DATA BREACH LITIGATION | Lead Case No.: 1:22-cv-01287-JES-JEH |

**MEMORANDUM IN SUPPORT OF MOTION FOR
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................................... 2

    A. Background .................................................................................................................. 2

    B. Settlement Benefits ...................................................................................................... 3

        1. Cash Compensation ............................................................................................. 4

        2. Identity Theft Monitoring Services .................................................................... 4

        3. Reimbursement For Out-Of- Pocket Losses and Lost Time ........................ 4

    C. Release .......................................................................................................................... 5

    D. Notice and Administration ......................................................................................... 5

III. ARGUMENT ......................................................................................................................... 6

    A. The Court Should Grant Final Certification of the Settlement Class ................... 6

    B. The Settlement Should Be Finally Approved ......................................................... 8

        1. Strength of Plaintiffs' Case ................................................................................. 9

        2. Complexity and Expense of Further Litigation ............................................ 10

        3. The Settlement Class's Reaction to the Settlement ..................................... 11

        4. Opinion of Competent Counsel ....................................................................... 11

        5. Stage of the Proceedings and Discovery Conducted ................................... 12

IV. CONCLUSION ................................................................................................................... 13

**TABLE OF AUTHORITIES**

Cases                                                                                                               Page Nos.

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219 (N.D. Ill. July 26, 2011) ............................11, 12

*Armstrong v. Bd. of Sch. Dirs.*,
    616 F.2d 305 (7th Cir. 1980) ..................................................................................................8, 12

*Breneman v. Keystone Rural Health Center*,
    No. 2023-618 (Franklin Cty, PA, Aug. 15, 2023) ...................................................................10

*Bruzek v. Husky Energy, Inc.*,
    No. 18-cv-697-wmc, 2021 U.S. Dist. LEXIS 261287 (W.D. Wis. Aug. 6, 2021) ....................12

*Clements v. WP Operations, LLC*,
    No. 19-cv-1051-wmc, 2022 U.S. Dist. LEXIS 160027 (W.D. Wis. Sep. 6, 2022) ...................11

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ...................................................................................................8

*Edwards v. Educ. Mgmt. Corp.*,
    No. 1:18-cv-03170-RLY-DLP, 2022 U.S. Dist. LEXIS 150784 (S.D. Ind. June 13, 2022) ......12

*Farnham v. Caribou Coffee Co.*,
    No. 16-cv-295-wmc, 2017 U.S. Dist. LEXIS 214929 (W.D. Wis. Dec. 15, 2017)....................11

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) .....................................................................................................8

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec. 16, 2019).........10

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................................11, 12, 13

*In re Medical Informatics Engineering, Inc.*,
    No. 3:15-MD-2667 (N.D. Ind.)................................................................................................10

*In re Tiktok, Inc., Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) .............................................................................9, 10, 12

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .....................................................................................................9

*Leung v. XPO Logistics, Inc.*,
　326 F.R.D. 185 (N.D. Ill. 2018)..................................................................................................11

*Lucas v. Vee Pak, Inc.*,
　No. 12-CV-09672, 2017 U.S. Dist. LEXIS 209872 (N.D. Ill. Dec. 20, 2017)...........................12

*Martin v. Reid*,
　818 F.3d 302 (7th Cir. 2016) .......................................................................................................9

*McPherson v. American Bank Systems, Inc.*,
　No. 20-cv-1307-G (W.D. Okla.) ..................................................................................................9

*Molski v. Gleich*,
　318 F.3d 937 (9th Cir. 2003) .....................................................................................................13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
　463 F.3d 646 (7th Cir. 2006) .......................................................................................................9

Rules

Fed. R. Civ. P. 23..........................................................................................................................7, 8

Plaintiffs Marian Caldwell Powell, Leniox Campbell, Leslie Green, Thomas Davis, and Nichole Prochnow ("Plaintiffs" or "Class Representatives"), individually and on behalf of all others similarly situated, submit this Memorandum in Support of Motion for Final Approval of Class Action Settlement.

**I.    INTRODUCTION**

The Court preliminarily approved the nationwide Settlement[1] between Plaintiffs and Defendant Afni, Inc. ("Defendant" or "Afni," and together with Plaintiffs, the "Parties" or "Settling Parties") on May 15, 2023. The Settlement related to Plaintiffs' and the Settlement Class's claims against Afni relating to a data breach that impacted Afni's customers' personally identifiable information ("PII"). Following preliminary approval, the Notice Program was carried out and notice was successfully disseminated to the Settlement Class in accordance with the Court's Preliminary Approval Order. The reaction to the Settlement has been overwhelmingly positive: as of August 29, 2023, there have been no objections and only two requests for exclusion out of a class of approximately 261,449 Settlement Class Members. The Settlement created a non-reversionary common fund of $1,850,000 that will provide significant benefits to the Settlement Class.

The preliminarily approved Settlement, as set forth in the executed Settlement Agreement, resolves Plaintiffs' claims on a class-wide basis. The Settlement is fair, reasonable, and adequate, has been well received by the Class, and satisfies all the criteria for final settlement approval. Accordingly, the Court should grant final settlement approval.

---

[1] Unless otherwise indicated, capitalized terms used in this Motion for Final Approval Of Class Action Settlement ("Motion for Final Approval") have the same meaning as in the Settlement Agreement, which is attached as **Exhibit A** to the Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Memorandum in Support of Preliminary Approval") (ECF No. 11-1).

1

II.   **STATEMENT OF FACTS**

    A.   **Background**

According to a Notice of Data Event that Afni provided to the Maine Attorney General's Office, "[o]n June 7, 2021, Afni discovered anomalous activity within its computer network."[2] Afni conducted an investigation with the aid of third-party cyber-forensic specialists and determined that on or before June 7, 2021, an unauthorized actor gained access to certain Afni systems and that the unauthorized actor may have viewed or taken data from within those systems."[3] As a result of the Data Incident, the Personal Information of approximately 261,449 persons was compromised when an unauthorized third party illegally accessed Defendant's computer systems and data. *See* Consolidated Class Action Complaint, ECF No. 8, ¶¶ 1, 22. The information accessed included the names, addresses, dates of birth, Social Security numbers, and financial account information of Plaintiffs and Settlement Class Members. *See id*., ¶ 24.

On October 28, 2022, Plaintiffs filed a Consolidated Class Action Complaint on behalf of themselves and similarly situated individuals concerning the Data Incident in the United States District Court for the Central District of Illinois. Plaintiffs brought claims for negligence, breach of implied contract, violations of the Illinois Consumer Fraud Act and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.*, unjust enrichment, and invasion of privacy. *See* ECF No. 8.

Beginning in November 2022, the Settling Parties engaged in extensive arm's length negotiations and mediation concerning a possible settlement of this matter. Declaration of Ben

---

[2] *Notice of Data Event*, Afni (June 14, 2022), available at
https://apps.web.maine.gov/online/aeviewer/ME/40/22f470bc-511d-4067-911dbbf0b230e9c6.shtml.
[3] *Id.*

2

Barnow, attached hereto as Exhibit 1 ("Barnow Decl."), ¶ 2. In advance of the formal mediation, the Settling Parties discussed their respective positions on the merits of the claims and class certification and provided detailed information to the mediator on the relevant facts and law. *Id.*, ¶ 3. Following extensive arm's length settlement negotiations, including a full-day mediation before Hon. Morton Denlow (Ret.) on January 24, 2023, the Settling Parties reached agreement on the general terms of the Settlement. *Id.*, ¶ 4.

Though professional, the settlement negotiations were adversarial, arm's-length, and non-collusive. The Settlement was reached after extensive investigation (including gathering all the information that was available regarding Afni and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to its customers) and other research, and a thorough evaluation of Plaintiffs' claims in light of such information.

On March 20, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval (ECF No. 11), which this Court granted in its May 15, 2023 order (ECF No. 14). Plaintiffs brought their Motion for Attorneys' Fees, Costs, Expenses, and Service Awards on July 31, 2023. *See* ECF No. 15. Plaintiffs now bring their Motion for Final Approval of Class Action Settlement before this Court.

    **B.**    **Settlement Benefits**

The Settlement requires Afni to pay $1,850,000.00 into the Settlement Fund. Settlement Agreement, ¶ 44. Compensation will be paid from the Settlement Fund to Settlement Class Members who submit a timely and valid claim form approved by the Settlement Administrator. *See id.*, ¶ 48. Claims will be subject to review for completeness and plausibility by the Settlement Administrator. *See id.*, ¶¶ 51, 53, 76(i). For claims deemed invalid, the Settlement Administrator

will provide claimants an opportunity to cure. *Id.*, ¶ 54. The Settlement Fund will be used to provide the following benefits to the Class:

### 1. Cash Compensation

In lieu of all compensation described in sections II.B.2. and II.B.3. below, Settlement Class Members may select a one-time cash payment estimated to be approximately $60.00, subject to proration depending on the number of claims filed. *Id.*, ¶ 56.

### 2. Identity Theft Monitoring Services

In addition to the benefits described in section II.B.3 below, but in the alternative to the cash payment described in section II.B.1 above, Settlement Class Members may select two years of three-bureau credit monitoring and identity theft protection services. The identity theft monitoring will include daily three-bureau credit monitoring, identity restoration services, and $1 million in identity theft insurance. *Id.*, ¶ 55.

### 3. Reimbursement For Out-Of- Pocket Losses and Lost Time

#### i. *Compensation For Out-of-Pocket Losses*

Settlement Class Members may claim up to $5,000.00 by submitting a valid and timely claim form and supporting third-party documentation for Out-of-Pocket Losses incurred as a result of the Data Incident. *Id.*, ¶ 50. To qualify for reimbursement, the Out-of-Pocket Losses must be fairly traceable to the Data Incident and not previously reimbursed by a third party. *Id.*, ¶ 26. In determining whether Out-of-Pocket Losses are fairly traceable to the Data Incident, the Settlement Administrator will consider "(i) whether the timing of the loss occurred on or after June 7, 2021; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the same type of Personal Information that was potentially impacted as a result of the Data Incident." Ordinary losses include, but are not limited to, the following categories:

> [C]osts associated with credit monitoring or identity theft insurance purchased directly by the claimant; costs associated with requesting a credit report; costs associated with a credit freeze; costs associated with cancelling a payment card and/or obtaining a replacement payment card; costs associated with closing a bank account and/or opening a new bank account; postage, long-distance phone charges, express mail and other incidental expenses; unrefunded overdraft and/or overdraft protection fees; unrefunded late and/or missed payment fees and/or charges; and damage and costs associated with any stolen funds, fraudulent transactions, unauthorized accounts, and/or fraudulent tax returns.

*Id.*, ¶ 26.

### ii.    Compensation For Lost Time

Settlement Class Members may claim up to four (4) hours of lost time spent dealing with the Data Incident, at $25.00 per hour. *Id.*, ¶ 52. All such lost time must be reasonably described and supported by an attestation that the time spent was related to the Data Incident. *Id.* Payments for Lost Time, in addition to payments for Out-of-Pocket Losses, are subject to the $5,000 cap. *Id.*

### C.    Release

In exchange for the relief described above, Class Members who do not opt out of the Settlement will fully release Afni for all Released Claims, including claims based on "(1) the alleged access, disclosure and/or acquisition of Settlement Class Members' personal information in the Data Incident; (2) Afni's maintenance of Settlement Class Members' personal information as it relates to the Data Incident; (3) Afni's information security policies and practices as it relates to the Data Incident; and (4) Afni's provision of notice to Settlement Class Members following the Data Incident." Settlement Agreement, ¶¶ 29, 86.

### D.    Notice and Administration

The Court appointed Angeion Group, LLC as the Claims Administrator. *See* ECF No. 14, ¶ 12. The Claims Administrator provided notice to the Class in the manner set forth below. *See* Declaration of Jonathan P. Shaffer Regarding Notice of Class Action Settlement ("Shaffer Decl."),

attached hereto as Exhibit 2. The cost of such Notice will be paid from the Settlement Fund. Settlement Agreement, ¶ 47.

Direct Notice was sent to 250,811 Settlement Class Members via First Class U.S. Mail after utilizing the National Change of Address database. *See* Shaffer Decl., ¶¶ 5–6. When the notice was returned as undeliverable and USPS did not provide an updated address, the Claims Administrator conducted skip traces in an attempt to locate updated address information and remailed the notice when addresses were attainable. *See id.*, ¶ 7. The Claims Administrator also created a website devoted to the Settlement where Settlement Class Members can access important documents, access important dates, and file claims. *See id.*, ¶¶ 8–9.[4]

The deadline to opt out or object to the Settlement was August 14, 2023. The Claims Administrator has received only two requests for exclusion. *See id.*, ¶ 14. Neither the Claims Administrator nor Class Counsel have received any objections to the Settlement. *See* Shaffer Decl., ¶ 15; Barnow Decl., ¶ 9. The claims deadline remains open until September 12, 2023. With the favorable reaction from the Settlement Class, Plaintiffs now request that this Court grant final approval of the Settlement to bring closure to this matter for Settlement Class Members and avoid the costs and delay of further litigation.

### III.    ARGUMENT

#### A.    The Court Should Grant Final Certification of the Settlement Class

Pursuant to the Settlement, the Court should certify the following Settlement Class:

> Any person to whom Afni provided a notification that his or her personal information might have been compromised in the Data Security Incident that occurred on or about June 7, 2021.

Settlement Agreement, ¶ 10(jj).

---

[4] *See* https://afnidataincidentsettlement.com (last accessed August 29, 2023).

A class may be certified under Rule 23 if the following "prerequisites" are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(a). In this case, the Settlement Class meets all the prerequisites. In addition to these prerequisites, a settlement under Rule 23(b)(3) must meet additional requirements. In order to certify a class under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The Court preliminarily certified the Settlement Class in its Preliminary Approval Order, issued May 15, 2023, finding that the Rule 23 elements were all met. *See* ECF No. 14, ¶ 2. Nothing has occurred that would change the Court's previous determination that Plaintiffs have proven the requirements under Rule 23. First, pursuant to Rule 23(a)(1), there can be no doubt that numerosity is satisfied as the Settlement Class consists of approximately 261,449 persons. Pursuant to Rule 23(a)(2), there are questions of law or fact common to the Settlement Class, including whether and to what extent Afni is liable for the Data Incident, and whether and to what extent class members are entitled to relief. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Here, the claims of the named Plaintiffs are typical of the claims of the Settlement Class. Plaintiffs' claims arise out of the same Data Incident that impacted all Settlement Class Members, and are based on the same legal theories as the potential claims of all class members. Finally, under Rule 23(a)(4), Plaintiffs and Class Counsel do not have any conflicts of interest with Settlement Class Members, Class Counsel has extensive

experience litigating complex data breach class actions, and have demonstrated their commitment to prosecute the action vigorously on behalf of the class.

The facts here also meet the requirements of Rule 23(b). Plaintiffs' claims arise out of the same singular incident, the Data Incident, and depend on whether Afni had a duty to protect the Personal Information in its possession; whether Afni breached those duties; whether class members had a legitimate expectation of privacy regarding their PII; and whether Afni engaged in deceptive or unfair acts and practices in violation of Illinois law. These questions can be resolved by resort to common evidence for all Settlement Class Members, including Afni's internal documents, testimony of its employees, and expert analysis. In addition, the class action mechanism is superior for resolving this matter given the very large size of the proposed class weighed against the expense and burden of individual actions. Because this case satisfies the Rule 23 requirements, the Court should grant final certification of the Settlement Class.

### B. The Settlement Should Be Finally Approved

The Court should grant final approval of the Settlement because it is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2) (A court can approve a class action settlement "only on finding that it is fair, reasonable, and adequate."). "In the class action context in particular, 'there is an overriding public interest in favor of settlement.'" *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "The general principles that guide the court's evaluation of a proposed class settlement agreement include (1) the strength of the class's case, (2) the complexity and expense of further litigation, (3) the amount of opposition, (4) the reaction of class members to the settlement, (5) the opinion of competent counsel, and (6) the stage of the proceedings and the amount of discovery that was completed."

*Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016). Courts "do not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness." *In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)). All of the factors listed above support final approval of the Settlement.

       **1.**    **Strength of Plaintiffs' Case**

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced with the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Plaintiffs and Class Counsel believe the claims asserted in the litigation have merit. They would not have fought to advance the claims if it were otherwise. Afni has maintained its position that Plaintiffs cannot state a claim for relief, that a class could not be certified, that it would not be found liable at trial, and that Plaintiffs would not be able to prove damages resulting from the Data Incident. While they disagree with Afni's views, Class Counsel are mindful of the issues of proof and possible defenses to the claims asserted in the litigation. They also recognize the difficulties in establishing liability on a class-wide basis through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here.

Pursuing this litigation through trial and appeal would be lengthy, complex, and impose significant costs on all parties. The Settlement provides immediate benefits in the form of a non-reversionary Settlement Fund of $1,850,000 for a class of approximately 261,449 persons, or approximately $7.08 per person. This is favorable to many recent data incident settlements, including ones that include more sensitive information than what was accessed in this incident, such as medical information. *See*, *e.g.*, *McPherson v. American Bank Systems, Inc.*, No. 20-cv-

1307-G (W.D. Okla.), ECF Nos. 54, 73 (finally approving financial data breach settlement with a $1,700,000 fund for class of 554,000 persons ($3.07 per class member)); *Breneman v. Keystone Rural Health Center*, No. 2023-618 (Franklin Cty, PA, Aug. 15, 2023) (finally approving medical data breach settlement which created a fund of $900,000 for approximately 235,237 class members ($3.82 per class member)); *In re Medical Informatics Engineering, Inc.*, No. 3:15-MD-2667 (N.D. Ind.), ECF No. 192 (finally approving medical data breach settlement which included a settlement fund of $2,750,000 and additional attorneys' fees of $1,000,000 for a class of over 3,000,000 persons ($1.25 per person)).

### 2. Complexity and Expense of Further Litigation

Due to the nature of class actions, and data security incident cases in particular, the benefits of early resolution are great. As one court put it, "Data breach cases such as the instant case are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019). Avoiding prolonged litigation and instead providing the Settlement Class with immediate benefits is the preferred outcome here.

Litigating this matter to final judgment would likely involve substantial motion practice, extensive fact discovery, class certification proceedings, dispositive motions and, of course, a trial and likely appeals. *See In re Tiktok*, 565 F. Supp. 3d at 1091 ("Proceeding to trial likely would take years and entail extensive fact and expert discovery and motion practice, including, in all probability, a contested motion to certify, motions for summary judgment, and *Daubert* motions."). Given the complex nature of the security breach at issue, a battle of the experts at trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant motion practice related to such. Also, considering the size of the Settlement Class

10

and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay. The Settlement avoids these expenses, delays, and risks and gives Settlement Class Members certain relief. *See Clements v. WP Operations, LLC*, No. 19-cv-1051-wmc, 2022 U.S. Dist. LEXIS 160027, at *13 (W.D. Wis. Sep. 6, 2022) ("Further litigation to resolve plaintiff's claim involves expenses to both parties, while the proposed settlement substantially reimburses class members without the hardships of continuing litigation."). This factor weighs in favor of final approval.

### 3. The Settlement Class's Reaction to the Settlement

The Settlement Class has reacted positively to the Settlement and has shown little opposition. To date, only two Settlement Class Members have opted out of the Settlement and no Settlement Class Members have objected to the Settlement. *See* Shaffer Decl. ¶¶ 14, 15 ; Barnow Decl. ¶ 9. This demonstrates the positive reaction of the Settlement Class and lack of opposition to the Settlement. *See*, *e.g.*, *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 197 (N.D. Ill. 2018) (holding that 26 opt-outs and 2 objections out of a class of approximately 311,013 class members supported final approval); *Farnham v. Caribou Coffee Co.*, No. 16-cv-295-wmc, 2017 U.S. Dist. LEXIS 214929, at *22 (W.D. Wis. Dec. 15, 2017) (four objections and 25 opt-outs from a class of approximately 530,000 favors final approval); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (235 opt-outs and 10 objections out of a class of over 32 million persons supported final approval of settlement). The miniscule number of opt-outs and lack of objections favors final approval of the Settlement.

### 4. Opinion of Competent Counsel

The Court is "entitled to rely heavily on the opinion of competent counsel" when determining whether to grant preliminary approval. *See Am. Int'l Grp., Inc. v. ACE INA Holdings,*

11

*Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *39–40 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325). There is no evidence of collusion here, as the Proposed Settlement was reached after extensive arm's length negotiations and a full day mediation. *See Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 U.S. Dist. LEXIS 209872, at *37 (N.D. Ill. Dec. 20, 2017). Class Counsel and Afni's Counsel are experienced litigators and all support the Proposed Settlement, which favors approval. *See, e.g.*, *Edwards v. Educ. Mgmt. Corp.*, No. 1:18-cv-03170-RLY-DLP, 2022 U.S. Dist. LEXIS 150784, at *18 (S.D. Ind. June 13, 2022) ("Both Class Counsel and Defense Counsel recommend that settlement should be approved, which weighs in favor of approval." (internal citation omitted)); *Bruzek v. Husky Energy, Inc.*, No. 18-cv-697-wmc, 2021 U.S. Dist. LEXIS 261287, at *11 (W.D. Wis. Aug. 6, 2021) (same).

### 5. Stage of the Proceedings and Discovery Conducted

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp.*, 2011 U.S. Dist. LEXIS 84219, at *39–*40 (quoting *Armstrong*, 616 F.2d at 325)). "[T]he standard under this factor is not whether it is conceivable that more discovery could possibly be conducted," and courts have approved settlements where there was no or only informal discovery. *Id.* at *41. Here, the Settling Parties exchanged informal discovery prior to mediation. The Settling Parties also engaged in extensive arm's length negotiation, ensuring each Party clearly understood the strengths and weaknesses of their case. *See In re Tiktok*, 565 F. Supp. 3d at 1091. Limited and informal discovery does not weigh against approval of a settlement where plaintiffs have received enough information to obtain a proper valuation of the case. *See Lucas*, 2017 U.S. Dist. LEXIS 209872, at *39; *see also In re AT&T*, 789 F. Supp. 2d at 967 (noting that

12

"the label of 'discovery' is not what matters," but rather "the pertinent inquiry is what facts and information have been provided").

Plaintiffs prompt resolution of the matter also supports final approval. "[A]n early resolution may demonstrate that the parties and their counsel are well prepared and well aware of the strength and weaknesses of their positions and of the interests to be served by an amicable end to the case." *In re AT&T*, 789 F. Supp. 2d at 967 (quoting *Molski v. Gleich*, 318 F.3d 937, 959 (9th Cir. 2003)). Early resolution is also consistent with the goal of a "just, speedy, and inexpensive determination of every action and proceeding" promoted by Rule 1 of the Federal Rules of Civil Procedure. This factor, as with all of the other factors to be considered prior to class action settlement approval, favors final approval of the Settlement.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion be granted and the Court enter an Order: (i) granting final approval of the Settlement Agreement, (ii) ordering final certification of the Settlement Class for settlement purposes, (iii) finding that the Notice Program was carried out as required by the Preliminary Approval Order and that the notice to the Class was sufficient, (iv) appointing Plaintiffs Marian Caldwell Powell, Leniox Campbell, Leslie Green, Thomas Davis, and Nichole Prochnow as Class Representatives, (v) appointing Ben Barnow of Barnow and Associates, P.C. and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel, and (vii) granting the motion for attorneys' fees, costs, expenses, and service awards filed on July 31, 2023.

Dated: August 29, 2023

Respectfully submitted,

/s/ Ben Barnow
Ben Barnow
Anthony L. Parkhill
Riley W. Prince

13

**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com
rprince@barnowlaw.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

*Attorneys for Plaintiffs & the Settlement Class*